## MINNIE MATTOS *v.* JOHN MATTOS.

### No. 1961.

SUBMITTED SEPTEMBER 23, 1930.          DECIDED OCTOBER 8, 1930.

PERRY, C. J., PARSONS, J., AND CIRCUIT JUDGE STEADMAN
IN PLACE OF BANKS, J., ABSENT.

OPINION OF THE COURT BY PARSONS, J.

This case comes before us upon libelee's appeal from the decree of the judge of the division of domestic relations granting the libelant's libel for divorce on the grounds of desertion and failure to provide. Testimony was introduced to the effect that the parties were intermarried in Honolulu on September 27, 1922, and thereafter lived together in Honolulu until March 29, 1929, when as a result of a quarrel with his wife the husband left home and has not lived with her since said last named date. In September, 1928, about six months prior to the separation above referred to, the husband had lost his job and the couple had moved to the home of the wife's mother, where they paid no rent. After September, 1928, and before the separation, the husband had odd jobs from time to time and during the times when he was thus employed he contributed his entire earnings to the support of their home. The wife also contributed her wages of $35 and later $40 per month from the post laundry at Fort Armstrong to the same purpose. The parties had frequent quarrels about bills and money matters and one quarrel, about two months before the separation, about the wife's punishment of their child. Prior to the separation the husband had been paying the grocery bills for the family and at that time he had an account at Wo Chong's store which he did

not then or thereafter "shut down." After the separation
the wife made no attempt to order, as she theretofore had
been in the habit of doing, on that account; and she made
no demand upon her husband for support. There is noth-
ing to show that from March 29, 1929, when the husband
left home, until June 14, 1929, when he went to work as a
water tender for the Matson Navigation Company at wages
of not more than $60 per month, the husband was finan-
cially able to provide maintenance for his wife. In June,
1929, shortly after his employment by the Matson Naviga-
tion Company, Mattos telephoned to his wife and told her
that if she wanted to go back to him he would come and
get her. According to her own testimony she replied, "No.
You left home and I won't go back to you." About two
months later Mattos went personally to his wife, again
asked her to return to him and she again refused. Except
ten dollars, which Mattos gave his wife on the occasion of
a personal call on her at the laundry where she was work-
ing and a box of candy which he then gave her for their
boy, the wife has received nothing from him since the date
of their separation.

The trial judge found from the evidence "that the libellee
did desert and abandon libellant without proper cause on
or about March 29, 1929," and "they lived separate and
apart from that time up to the present." Quoting further
from the oral decision of the judge as set forth in the tran-
script: "The court finds from the testimony that some time
in the month of August, this libellee saw the libellant at
the place where she was employed and said to her, 'What
about going to San Francisco?' and she said she was not
going to San Francisco and that she would rather stay in
Honolulu. Also from the testimony, some two months
prior to that date,—the date of either visit is not fixed,—
the libellee telephoned to libellant and said 'what about
getting together again' and she said no she wouldn't do it.

The court does not believe that that is such a sufficient showing of an attempt to effect a reconciliation and that it is not an absolute, unconditional offer on the part of the libellee to resume cohabitation and furnish her with a home and proper support as would cure the previous desertion so made. The court therefore finds the allegations of the libel as to desertion and nonsupport are proved as alleged.   *   *   *   This man went to work in June and furnished his wife with no support of any kind until November when he gave her ten dollars. The libellee supported this woman up to March, the month in which he left the home; since which time the court finds that the libellant has not received proper support and maintenance from the libellee to which she is reasonably entitled. Decree of absolute divorce will be granted on the ground of failure to provide and desertion." The decree appealed from was then entered.

The questions presented to this court by the record may be stated as follows: (1) Did the offer of the libellee, made to the libellant shortly after June 14, 1929, in the circumstances above stated, to take her back, terminate the period of his desertion of her, which began March 29, 1929? (2) Will the record and transcript support a finding that at any time from and after the month of September, 1928, until the date of the filing of the libel herein, "the husband, being of sufficient ability to provide suitable maintenance for his wife," neglected or refused "to do so for a continuous period of not less than sixty days," within the purview of section 2965, R. L. 1925?

(1)   In *Heritage* v. *Heritage*, 30 Haw. 796, this court has held (quoting from the syllabus) : "When a wife willfully and utterly deserts her husband but before her desertion continues for the statutory period of six months she unconditionally and in good faith offers to return to him her desertion is thereby cured and the husband, if he re-

fuses to accept the wife's offer to return, cannot maintain an action for divorce on the ground of such desertion." With the words husband and wife transposed the foregoing rule is applicable to the case at bar. Prior to the date of the *Heritage* case above cited this court held: "It is unquestionably the law that even though the wife deliberately deserted her husband without cause or provocation if she afterwards and before the cause of action had accrued repented and was prevented from returning by his refusal without cause to receive her then the statutory desertion is not established. The party at fault in the original separation desiring to resume proper marital relations within the statutory period and thus prevent the desertion from becoming a ground for divorce must in good faith offer to return without other conditions than those incident to the proper treatment of each by the other as husband and wife." *Santos* v. *Santos,* 26 Haw. 124, 126, 127.

In the trial judge's decision in the case at bar, hereinabove quoted in part, no finding is made that the husband's offers of reconciliation were made in bad faith and there is ample evidence to support a finding of good faith in the premises. We are unable to find any conditions attached to his offer. The refusal of the wife to return to him was unequivocal in terms and did not purport to be based on any unwillingness on her part to accept conditions, express or implied. As was said in *Vickers* v. *Vickers,* 95 W. Va. 323, 122 S. E. 279, 41 A. L. R. 266, 269: "Many courts hold that if it be shown that the offer would be futile no offer need be shown. We need not decide that point." Applying the rule above quoted from *Santos* v. *Santos* and *Heritage* v. *Heritage* to the facts in the case at bar, we conclude that the libelee's desertion of the libelant, which began March 29, 1929, was thereafter cured by the libelant's unconditional offer in good faith, made before the expiration of the statutory period of six months,

to resume marital relations with her, and because of her refusal in the circumstances named to accept such offer she cannot now maintain an action for divorce on the ground of such desertion.

(2) Will the record support the circuit judge's finding of failure to provide within the meaning of the statute? The libel alleges that said failure began and continued from and after the month of September, 1928. The transcript shows that the libelee lost his job in that month. On cross-examination the libelant herself testified as follows (Tr. pp. 13, 14) : "Q The only reason he didn't work steadily was that there wasn't enough work to do, wasn't it? A Yes. Q When there was work, he worked? A Yes. Q He paid the bills? A Yes. Q Supplied the home? A Yes, he paid the grocery bills. Q How about your clothes and the children's clothes? A I got that with my money. Q All the money that he earned was used in supporting the home? A Yes. Q He wasn't making enough himself, was he? A No. Q And you helped with the balance? A Yes."

In the above circumstances the finding of the trial judge that "the libellee supported this woman up to March, the month in which he left the home," is fully warranted. As hereinabove set forth, the evidence is insufficient to show ability on the part of the husband to provide maintenance for his wife from the date of their separation until June 14, when he went to work on the Matsonia. After the last named date the husband's desertion of his wife was terminated, as hereinabove more specifically set forth, by his offer in good faith and without condition to take her back. Her refusal in the circumstances to go back to him, as we have just held, deprived her of the right to a divorce on the ground of desertion. Thenceforth she was the party at fault for the separation. Thenceforth she was the deserter (*Vickers* v. *Vickers, supra.* See also 9 R. C. L. 373).

This being true, while the separation thereafter continued without reasonable cause she was not entitled to be supported by her husband; and his failure to support her separately, in the circumstances, constitutes no ground of divorce. Quoting from the syllabus in *Costa* v. *Costa,* 23 Haw. 381: "A wife is not entitled to a divorce on the ground of failure to provide if she deserts her husband or lives apart from him without reasonable cause." See also *Kui Yin Fong* v. *William S. Fong,* 27 Haw. 823.

The decree is reversed and the cause is remanded to the circuit judge with instructions to dismiss the libel.

*H. T. Mills* for libelant.

*O. P. Soares* for libelee.